**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**ASHLAND, LONDON, AND LEXINGTON DIVISIONS**

|  |  |  |
|---|---|---|
| IN RE: | : | |
| | : | **Chapter 7** |
| **LICKING RIVER MINING, LLC,** *et al.* | : | **Case No. 14-10201** |
| | : | **Jointly Administered** |
| **Debtors** | : | |
| _____ | : | |
| | : | |
| **Phaedra Spradlin, not individually but as** | : | |
| **Chapter 7 Trustee for Debtors Licking** | : | |
| **River Mining, LLC, Licking River** | : | |
| **Resources, Inc., S. M & J., Inc., Fox Knob** | : | |
| **Coal Co., Inc., J.A.D. Coal Company, Inc.,** | : | |
| **U.S. Coal Corporation, Harlan County** | : | |
| **Mining, LLC, Oak Hill Coal, Inc., Sandlick** | : | |
| **Coal Company, LLC, and U.S. Coal** | : | |
| **Marketing, LLC,** | : | |
| | : | **Adv. No. 16-1035** |
| **Plaintiffs** | : | |
| **v.** | : | |
| | : | |
| **Monday Coal, LLC,** | : | |
| | : | |
| **Defendant** | : | |
| _____ | : | |

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO
PARTIALLY DISMISS FIRST AMENDED COMPLAINT**

This matter is before the Court on Defendant's Motion to Dismiss the Trustee's First

Amended Complaint.   [ECF Nos. 25 and 25-1 (memorandum in support, hereafter the

"Motion").]   In her First Amended Complaint [ECF No. 24 ("Amended Complaint")], Plaintiff

Phaedra Spradlin, chapter 7 trustee ("Trustee"), on behalf of debtor U.S. Coal Corporation ("U.S.

Coal") and its nine co-debtor subsidiaries ("Subsidiaries"[1]), asserts claims against Defendant

---

[1] U.S. Coal's Subsidiaries are: J.A.D. Coal Company, Inc., ("JAD"), Licking River Mining, LLC ("LR Mining"), Licking River Resources, Inc. ("Resources"), S. M. & J., Inc. ("SM&J"), Fox Knob Coal Co., Inc. ("Fox Knob"), Oak Hill Coal, Inc. ("Oak Hill"), Sandlick Coal Company, LLC ("Sandlick"), Harlan County Mining, LLC ("Harlan"), and U.S. Coal Marketing LLC ("Marketing").   U.S. Coal and the Subsidiaries are the "Debtors."

Monday Coal, LLC ("Monday") for avoidance of fraudulent transfers under chapter 5 of the

Bankruptcy Code[2] and under Kentucky Revised Statutes §§ 378.010 and 378.020.[3]   Trustee

also asserts claims under chapter 5 of the Bankruptcy Code for avoidance of preferential

payments and post-petition transfers, recovery of all avoided transfers, and disallowance of

claims.   Monday moves to dismiss the Amended Complaint in substantial part for failure to state

a claim under Civil Rule 12(b)(6), made applicable to adversary proceedings by Bankruptcy Rule

7012(b).

### BACKGROUND AND FACTS ALLEGED IN THE
### AMENDED COMPLAINT AND ITS EXHIBIT

Trustee filed a complaint commencing this proceeding on June 12, 2016, asserting eight

Counts on behalf of U.S. Coal and the Subsidiaries against Monday under the same legal theories

in the Amended Complaint.   On August 9, Monday moved to dismiss the claims except "to the

extent to which there are alleged transfers to Monday Coal during the non-insider preference

period of February 22, 2014 to May 23, 2014."   [ECF No. 14-1 at 2 n.3 (the "90-day Preference

Claim").]   Trustee filed the Amended Complaint over two months later on October 19 in

response to Monday's first motion to dismiss.   Monday again seeks a dismissal with the same

caveat for the 90-day Preference Claim.

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. References to the Federal Rules of Bankruptcy Procedure appear as "Bankruptcy Rule ___," and references to the Federal Rules of Civil Procedure appear as "Civil Rule __."

[3] Effective as of January 1, 2016, chapter 378 of the Kentucky Revised Statutes was repealed, and Kentucky adopted the Uniform Voidable Transactions Act ("UVTA").   KY. REV. STAT. §§ 378A.005 to .140.   "No statute shall be construed to be retroactive, unless expressly so declared."   KY. REV. STAT. § 446.080(3).   The UVTA does not state that it is retroactive.   Therefore, any transfer occurring prior to its enactment (like those that are the subject of this action) must be considered under the repealed chapter 378, which was in effect at the time of the pertinent transfers.   Textual references to the Kentucky Revised Statutes hereafter shall appear as "K.R.S. § ___."

I.    **Trustee Seeks to Avoid and Recover Transfers to Monday Relating to Agreements
between Debtors and Monday.**

The Amended Complaint alleges that Debtors were "coal mining operators" that
"maintained business relationships with various business entities, through which the Debtors
regularly purchased goods and services" and that Debtors "regularly paid for services used to
facilitate their coal mining operations."   [Am. Compl. ¶¶ 24, 25.[4]]   Trustee alleges that several
Debtors "did not generate any revenue on their own[,]" while others, including Resources, "did
generate at least some revenue."   [*Id.* ¶ 30.]   Trustee alleges the manner in which Debtors
collectively handled their cash as follows:

> Before the commencement of the Bankruptcy Cases, the Debtors operated a
> unified cash management system which had three main components: (i) cash
> collection; (ii) cash concentration; and (iii) cash distribution. The Debtors
> generated and received funds from a wide variety of sources, including revenue
> from coal supply agreements with various customers, including electricity
> generators, industrial users, steel mills and independent coke producers. The
> Debtors made payments by check, wire, and ACH transfer to their suppliers of
> goods and services, including the transfers at issue and as set forth in this
> Complaint, from their bank accounts.

[*Id.* ¶ 29.]

Defendant Monday is an entity from whom "Debtors frequently purchased goods and
services…."   [*Id.* ¶ 25.]   Trustee alleges that Debtors and Monday "apparently entered into
numerous agreements, which are evidenced by invoices, communications and other documents
(collectively, the 'Agreements')."[5]   [*Id.* ¶ 32.]   The Amended Complaint does not state how
Debtors transferred any specific funds to Monday, but summarily alleges that "Monday was
consistently paid on its Agreements with the Debtors."   [*Id.* ¶ 37.]   The Amended Complaint

---

[4] A court evaluating a motion to dismiss under Civil Rule 12(b)(6) must accept all of the well-pleaded factual
allegations in the complaint as true, and construe the complaint liberally in the plaintiff's favor.   *Lawrence v.
Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999).   This Memorandum Opinion and Order thus takes as
true the well-pleaded facts alleged in the Amended Complaint.

[5] The Court adopts the definition of the term "Agreements" as used in Paragraph 32 of the Amended Complaint for
purposes of this Memorandum Opinion and Order.

also alleges that "Debtors and [Monday] conducted business with one another up to and through

the Petition Date pursuant to the Agreements," that Debtors made transfers to Monday, and that

"[t]he Debtors paid [Monday] prior to the Petition Date an amount of not less than $3,868,900.08

("Total Transfers")…."[6]   [*Id.* ¶¶ 38, 41, 49, 59, 65, 69, 75, 80.]   Exhibit A to the Amended

Complaint lists transactions with Monday.   It identifies the "Company Name" as Resources and

itemizes payments to Monday, but it does not expressly specify that Resources is the payor.

[ECF 24-1.]   That said, based on the Exhibit, it is plausible that Resources is the transferor.

Exhibit A contains some specific information (including dates, amounts, and recipient) about

"vendor invoices" leading to "vendor payments" (and a few other transaction types) between

February 2009 and March 2015, presumably from Resources to Monday, resulting in payments

totaling $3,979,634.68.   Some line items on Exhibit A also briefly describe services that

Monday evidently provided (e.g., "equipment rental," "service truck & mechanic," "dozer

work").

    The Amended Complaint is unclear whether it seeks to avoid the underlying obligation to

pay Monday's invoices.   It does not allege that Monday failed to provide goods and services in

accordance with the Agreements; rather, it states that Monday "allegedly provided goods and/or

services to one of the Debtors, including but not limited to the Total Transfers set forth in the

invoices between the parties."   [Am. Compl. ¶ 39.]   Trustee's Response to this Motion offers

that Debtors' records suggest that these were not "ordinary course" transactions and claims that

Paragraph 40 of the Amended Complaint contains this averment.   [ECF No. 27 ("Response") at

4.]   Paragraph 40, however, does not allege this; it states that Monday billed "the Debtors" an

average of about $5,380 more per month for its coal-related services in the 12 months

---

[6] The Court adopts the definition of the term "Total Transfers" as used in Paragraph 1 of the Amended Complaint
for purposes of this Memorandum Opinion and Order.

immediately before "the Petition Date"[7] than it did in the preceding 12-month period, "[e]ven

though U.S. Coal claimed to suffer from a decreased demand for coal and reduced production

output…."   [Am. Compl. ¶ 40.]

## II.    Trustee Pleads that Monday is an Insider for Purposes of Section 547 Based on its Sole Member's Familial Ties.

Defendant Monday (a limited liability company) has one member, non-party Jonathan

Whitt ("Member")—the son of John Whitt, a former U.S. Coal board member, principal equity

holder, and alleged lender to LR Mining.   [Am. Compl. ¶ 23.]   Member also is the nephew of

Kenneth Whitt, Resources' Senior Vice President of Operations and "another principal equity

holder [in] and alleged lender to" LR Mining.   [*Id.*]   The Amended Complaint does not offer

the time frame in which either John or Kenneth Whitt held these "insider" positions, or compare

that date range with the period in which the Total Transfers were made to Monday.

Nevertheless, based on Member's family ties, Trustee alleges that Monday, the Defendant LLC,

"is an 'insider' of the Debtors as defined by" § 101(31), and states that "[b]oth John Whitt and

Kenneth Whitt had significant influence over the payments to U.S. Coal creditors, including

payments to" Monday.   [*Id.* ¶¶ 23]

Trustee further alleges that John Whitt (defined as "Defendant's Father") "also was

involved in the operations of Defendant and played a role in negotiating the Agreements," which

"were not arms-length agreements."   [*Id.* ¶¶ 33, 34.]   Trustee pleads "[e]mail correspondence

between Defendants' officers and directors, Chris Lacy and John Collins indicates that the

---

[7] The Amended Complaint defines the "Petition Date" as "the filing of the Bankruptcy."   [Am. Compl. ¶ 1.]   As Debtors' bankruptcy petitions all were not filed on the same date, this definition lacks clarity.   The allegations in Count IV, seeking relief for actual fraud under state law, assist slightly as Trustee seeks to recover the Total Transfers made "prior to the filing of the involuntary bankruptcy."   However, creditors filed several involuntary petitions in these jointly administered cases on different dates.   Given the Court's rulings herein, the Court interprets the "Petition Date" and the "filing of the involuntary bankruptcy" to be May 23, 2014, the date certain creditors filed the involuntary chapter 11 petition for Resources.

Defendant's Father had attempted to influence payments made by the Debtors to the Defendant." [*Id*. ¶ 35.[8]]   Further, Trustee asserts that "Debtors' other directors and officers consistently gave special attention to Defendant's payment schedule" and that "[p]ayments were consistently ensured to the detriment of [*sic*] as other creditors were not paid in a timely manner."   [*Id*. ¶¶ 35, 36.]

While the Amended Complaint defines John Whitt as "Defendant's Father," Monday, a limited liability company, is the only named defendant in this case, and Member is not a party. Thus, the Amended Complaint improperly conflates Member with Monday.   While Trustee's Response calls Monday the "alter-ego" of Member, a "clear insider" [Resp. 4], the Amended Complaint does not make a similar allegation or contain an affirmative claim to pierce the veil of Defendant, an LLC, to reach Member.

## III.    Trustee Asserts Eight Claims in the Amended Complaint.

The Amended Complaint seeks "to avoid and recover from [Monday] the transfers made to [Monday] within five (5) years of the filing of the Bankruptcy … set forth in Exhibit A, which total $3,898,900.08 ("Total Transfers")…."   [Am. Compl. ¶ 1.]   The Amended Complaint asserts eight causes of action:

   a.  Count I seeks to recover preferential payments from Debtors to Monday, as an alleged insider and creditor at the time of each Preferential Transfer, as a subset of the Total Transfers, totaling $573,742.03 (the "Preference Payments").

   b.  Counts II and IV allege actual fraud premised on the theory that Debtors made, or caused to be made, payments to Monday with the actual intent to hinder, delay or defraud creditors, as evidenced by several badges of fraud.

   c.  Counts III and V allege, in the alternative to the claims for actual fraud, that payments made to Monday amounted to constructive fraud.

   d.  Count VI seeks to recover post-petition payments to Monday.

---

[8] The Amended Complaint does not explain the phrase "Defendants' officers and directors."   There only is one defendant in this proceeding, Monday, which Trustee alleges is a one-member LLC.   [Am. Compl. ¶ 23.]   The Amended Complaint does not attach the email correspondence referenced in Paragraph 35.   Accordingly, the Court would have to speculate to give meaning to this allegation.

    e.   Count VII seeks to recover any avoided transfers on theories that, under § 550, Monday either was the initial transferee, the immediate or mediate transferee, or the entity for whose benefit the transfers were made.

    f.   Count VIII seeks to disallow Monday's claims against Debtors under § 502(d).

## JURISDICTION

The Court has jurisdiction of this matter.   28 U.S.C. § 1334(b).   This is a core proceeding.   28 U.S.C. § 157(b)(2)(F), (H).   Venue is proper.   28 U.S.C. § 1409.   Trustee pleads that "this is a 'core' proceeding to be heard and determined by the Court" and "the Court may enter final orders for matters contained herein."   [Am. Compl. ¶ 3.]   Monday consents to the entry of final orders by this Court.   [ECF No. 28.]

## MOTION TO DISMISS STANDARD

Civil Rule 8(a)(2), made applicable in adversary proceedings via Bankruptcy Rule 7008(a), requires "a short and plain statement of the claim showing that the pleader is entitled to relief."   FED. R. CIV. P. 8(a)(2).   In analyzing the pleading requirements of Civil Rule 8(a)(2) in connection with a Civil Rule 12(b)(6) motion to dismiss, the Supreme Court stated, "[t]o survive a [Civil Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'   Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"   *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).   In defining the "plausibility" standard, the Supreme Court stated,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.   The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.   Where a complaint pleads facts that are "merely consistent

with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

. . .

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.   While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.   When there are well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief.

*Id*. at 678-79 (citations omitted) (quoting *Twombly*, 550 U.S. at 556, 557).   Thus, as to each

count, the Court must determine whether the Amended Complaint contains sufficient factual

matter as to each element necessary to state a claim to relief that is plausible on its face.

In determining whether a complaint states a plausible claim for relief, the Court may consider the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the Court may take judicial notice.

*Haney v. Educ. Credit Mgmt. Corp. (In re Haney)*, Ch. 13 Case No. 97-70937, Adv. No. 11-

7024, 2011 WL 6000886, at *2 (Bankr. E.D. Ky. Nov. 30, 2011) (citations omitted), *appeal*

*dismissed as untimely*, 2012 WL 3683533 (E.D. Ky. Aug. 27, 2012); *see also Century Indemnity*

*Co. v. Special Metals Corp. (In re Special Metals Corp.),* 317 B.R. 326, 329 (Bankr. E.D. Ky.

2004) (stating that, in evaluating a motion to dismiss, "[t]he court is generally not to look beyond

the pleadings, but may consider documents incorporated by reference into the pleadings, even if

those documents are not attached to the pleadings.") (citation omitted); *In re Ludwick*, 185 B.R.

238, 240 n.3 (W.D. Mich. 1995) (stating that Federal Rule of Evidence 201 permits a court to

take judicial notice of its own court records).

## LAW AND ANALYSIS

I.    **The Amended Complaint Fails to Plead a Plausible Basis to Support that Monday is an Insider for Purposes of its Preference Claim.**

In her Amended Complaint, Trustee contends that Monday is an insider of "the Debtors" for purposes of the preference claim in Count I.   In her Response, Trustee argues: "[t]he Amended Complaint adequately alleges that [Monday] was (i) a statutory insiders [*sic*] due to its ownership and management by John Whitt who was director and officer of Debtors as well a person in control of the Debtors, and (ii) non-statutory insiders [*sic*] by its close relationship with an insider."   [Resp. 5.]   As discussed below, "insider" is defined in § 101(31).   Courts also recognize that entities that do not fall within the Code's definition of an "insider" still may be found to be "non-statutory insiders."   *See*, *e.g.*, *Rieser v. Milford (In re Chari)*, 276 B.R. 206, 212 (Bankr. S.D. Ohio 2002) ("the relationships listed in the statute are not exhaustive, but only illustrative examples of 'insider' relationships").

Taking all of the well-pleaded factual allegations in the Amended Complaint as true, and construing them liberally in Trustee's favor, Trustee's position lacks merit.   Contrary to the aforementioned statement in the Response, the Amended Complaint *does not* allege that Member's father, John Whitt, owned or managed Monday.   Moreover, the Amended Complaint does not allege plausible facts to set out how Monday is an insider of any specific Debtor, including Resources, which is the only Debtor referenced in the Amended Complaint's Exhibit A that plausibly could be the source of the Total Transfers.   While the Amended Complaint repeatedly labels Monday an "insider" of all Debtors, the Court may not accept bare legal conclusions as true for purposes of a Civil Rule 12(b)(6) motion.[9]   *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008).

---

[9] Trustee repeatedly avers in both her Amended Complaint and in her Response that Monday is an insider of "the Debtors."   This contention reflects a persistent problem with Trustee's pleading:   Trustee generally refers to all

A.      **Monday is not a statutory insider.**

The Code defines "insider" as follows:

(31) The term "insider" includes— ...

(B) if the debtor is a corporation—

(i) director of the debtor;

(ii) officer of the debtor;

(iii) person in control of the debtor;

(iv) partnership in which the debtor is a general partner;

(v) general partner of the debtor;

(vi) relative of a general partner, director, officer or person in control of the debtor;

…

(E) an affiliate, or insider of an affiliate as if such affiliate were the debtor.

11 U.S.C. § 101(31).   In turn, "affiliate" is defined to mean:

(A) entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor. . . [;]

(B) corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor. . . [;]

(C) person whose business is operated under a lease or operating agreement by a debtor, or person substantially all of whose property is operated under an operating agreement with the debtor; or

(D) entity that operates the business or substantially all of the property of the debtor under a lease or operating agreement.

11 U.S.C. § 101(2).

Applying the Code's plain language to the facts alleged, the Amended Complaint does

not plausibly plead that Monday is a statutory insider of any Debtor, including Resources.

---

Debtors collectively.   Debtors' individual bankruptcy cases are not substantively consolidated, and the pleading identifies each of "the Debtors" as a separately-organized legal entity.   The pleading makes no effort to establish a factual basis to set aside any Debtor's corporate form so as to suggest that lumping grouping Debtors together is appropriate.   In the absence of a basis not to consider each Debtor as a separate entity, for purposes of an analysis of her claims, Trustee has an obligation to plead plausible facts to support the causes of action bearing on specific transactions or relationships between clearly-identified parties.

Monday is not alleged to be a director, officer, person in control, or general partner of any

Debtor.   Monday, an LLC, cannot be a "relative" of a general partner, director, officer, or

person in control of a Debtor, as the term "relative" connotes an "individual" under § 101(45).[10]

And, Monday is not alleged to be a partnership in which any Debtor is a general partner.   Thus,

Monday is not alleged to be a statutory insider of any Debtor, including Resources, under

§ 101(31)(B).

In addition, Trustee does not plead that Monday or Member, its sole owner, own 20% or

more of any Debtor, nor is any Debtor alleged to own 20% or more of Monday.   Monday also is

not alleged to be connected to any Debtor via a lease or operating agreement.   Therefore, the

Amended Complaint does not allege a plausible basis to find that Monday is a statutory insider

of any Debtor, including Resources, under the "affiliate" provisions in §§ 101(31)(E) and

101(2)(B), either.

In an attempt to manufacture an insider link under the Code, the Amended Complaint

alleges facts to support that (for some period) John Whitt, Member's father, was a statutory

insider of U.S. Coal and LR Mining, and that (for some period) Kenneth Whitt, Member's uncle,

was a statutory insider of Resources and LR Mining, under § 101(31)(B).   It also plausibly

alleges that Member (for some period) was a statutory insider of U.S. Coal and LR Mining as

John Whitt's son, and an insider of Resources and LR Mining as Kenneth Whitt's nephew, under

§ 101(31)(B)(vi).   But the plausible inferences stop there and do not reach Monday, a separate

legal entity from its owner.

To argue why Monday is a statutory insider, Trustee's Response discusses how courts

view limited liability companies in the context of how insiders are defined in § 101(31), but the

---

[10] "Relative" means an "individual related by affinity or consanguinity within the third degree as determined by the common law, or individual in a step or adoptive relationship within such third degree[.]"   11 U.S.C. § 101(45).

argument misses the mark by focusing upon Member's relationship with Monday.   For purposes

of her preference claim in Count I, the correct question is whether Monday is an insider of a

Debtor, such as Resources, a Kentucky corporation.   [Am. Compl. ¶ 15.]   That analysis,

conducted above, confirms that Monday is not a statutory insider of Resources.   The fact that

Monday is organized as a limited liability company does not affect whether Monday is a

statutory insider of Resources under § 101(31).

Courts may not construe the definition of a *per se* insider beyond the plain language of

the statute.  *Miller Ave. Prof'l & Promotional Servs., Inc. v. Brady (In re Enter. Acquisition*

*Partners, Inc.)*, 319 B.R. 626, 632 (B.A.P. 9th Cir. 2004) ("The case law recognizes that per se

insider status should not be expanded to include those who are not listed in the statute," as "[t]o

do so would result in adding language to the statute that is not there, which it is not within the

province of the court to do." (citations omitted)).   This Court cannot rewrite the Code, as would

be necessary to include Monday as a statutory insider of Resources.

**B.**     **Monday is not a non-statutory insider.**

Trustee contends that, because Member is an insider, and Member owns and operates

Monday, Trustee plausibly has alleged that Monday is an insider.   [Resp. 2 ("Both the

Complaint and the Amended Complaint alleged Defendant was an insider based on the fact that

it was an entity owned and operated by an insider, Jonathan Whitt.").]   This Court disagrees.

The Eastern District of Kentucky has explained that a non-statutory insider typically will

have a "sufficiently close relationship" with the debtor to justify such status, and may exert

"control or influence" over the debtor:

> Some courts have defined the term "insider" to include "anyone with 'a
> sufficiently close relationship with the debtor that his conduct is made subject to
> closer scrutiny than those dealing at arm's length with the debtor.'"   *In re*
> *Congrove*, No. 04-8049, 2005 Bankr. LEXIS 1599, 2005 WL 2089856, *7 (BAP
> 6th Cir. Aug. 31, 2005) (citing *In re Krehl*, 86 F.3d 737, 741 (7th Cir. 1996)

(quoting S. Rep. No. 95-989 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5810)). …

Other courts have held that the question of insider status boils down to one of control—to what extent does the individual or entity exert control or influence over the debtor?  *Miller v. Schuman (In re Schuman)*, 81 B.R. 583, 586 (BAP 9th Cir. 1987); *In re Dupuis*, 265 B.R. 878, 885 (Bankr. N.D. Ohio 2001). …

Even if Williams does not fit snugly the statutory definition of an "insider," both Williams and the Trustee agree that increased scrutiny is warranted where the line between the claimant and the Debtor is not entirely clear.

*Spradlin v. Williams (In re Alma Energy, LLC)*, Civil No. 10-80-ART, 2010 U.S. Dist. LEXIS 121696, at *10-14 (E.D. Ky. Nov. 16, 2010).   Another district court within the Sixth Circuit offered a comparable view:

The courts … have established a catch-all category of "non-statutory insiders." *In re U.S. Medical, Inc.*, 531 F.3d 1272, 1276 (10th Cir. 2008).   The Sixth Circuit case law on non-statutory insider status is scarce, and the court must consider case law decided outside this district and circuit.   Most recently, the Third Circuit in *In re Winstar Communications, Inc.*, 554 F.3d 382 (3rd Cir. 2009) elaborated on the standard for determining whether a creditor may be treated as a "non-statutory insider."   A showing of actual control over the debtor is not necessary; instead, the court asks "whether there is a close relationship [between debtor and creditor] and . . . anything other than closeness to suggest that any transactions were not conducted at arm's length."   *Id.* at 396-97 (citations omitted); see also S. Rep. No. 95-989, at 25 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5810 ("An insider is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at [arm's] length with the debtor."   Arm's length is traditionally defined as any transaction negotiated in good faith in the ordinary course of business by parties, each with independent interests and acting in their own best interests.   *In re U.S. Medical, Inc.*, 531 F.3d at 1277, n.4.

*Taunt v. Agrawal (In re Piccinini)*, 439 B.R. 100, 104 (E.D. Mich. 2010).   This circuit's Bankruptcy Appellate Panel also has discussed who may be a non-statutory insider:

The term insider includes anyone with "a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor."   *In re Krehl*, 86 F.3d 737, 741 (7th Cir. 1996) (quoting S. Rep. No. 95-989 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5810); *accord, e.g.*, *Wilson v. Huffman (In re Missionary Baptist Found. of Am., Inc.)*, 712 F.2d 206, 210 (5th Cir. 1983).   With respect to the question of whether a creditor may be an insider of a debtor, one bankruptcy court has explained:

> In determining who is an insider, the Court must examine the closeness of
> the purported insider to the debtor, the degree to which the former is able
> to exert control or influence over the debtor, and whether the transactions
> between them were conducted at arms length. The primary focus of the
> determination is upon the degree of control. . . .
>
> The courts have been reluctant to construe financial oversight--even
> intrusive oversight-- as the control required to impose insider status. The
> fact that a [party] examines, monitors, and even controls some aspects of
> the debtor's financial affairs does not render the [party] an insider.

*Meeks v. Bank of Rison (In re Armstrong)*, 231 B.R. 746, 749-50 (Bankr. E.D.
Ark. 1999) (internal citations omitted).

*Congrove v. McDonald's Corp. (In re Congrove)*, No. 04-8049, 2005 Bankr. LEXIS 1599, at

*21-22 (B.A.P. 6th Cir. Aug. 31, 2005) (unpublished), *aff'd* 222 F. App'x 450 (6th Cir. 2007).

These opinions thus reason that a non-statutory insider will have a sufficiently close relationship

with a debtor, which may be based on control or influence over the debtor, such that dealings

between that insider and the debtor are not at arm's length.

Under this authority, and taking into consideration the familial relationships alleged in

the Amended Complaint, the pleading does not plausibly allege that Monday is a non-statutory

insider for purposes of Trustee's preference claim in Count I.   While Trustee certainly pleads

that the relationships between Member and John and Kenneth Whitt means that all of the

Agreements between Monday and "the Debtors" "were not arms-length agreements" [Am.

Compl. ¶¶ 23, 33], this bare conclusion results from conflating individuals with separately-

organized corporate entities.   None of the Whitts, personally, are alleged to be parties to the

Agreements, and Trustee pleads no factual basis to disregard any entity's corporate form.

Kentucky courts "generally [are] reluctant to disregard the corporate entity."   *Sudamax Industria*

*e Comercio de Cigarros, LTDA v. Buttes & Ashes, Inc.*, 516 F.Supp.2d 841, 847 (W.D. Ky.

2007).   The Amended Complaint offers no basis to ignore this basic tenet of Kentucky law.

14

Next, Monday is not alleged to have any ability to exercise control over any Debtor that was a counter-party to any of the Agreements.   In fact, the Amended Complaint does not identify which of "the Agreements" were with any specific Debtor, except to the extent that Exhibit A appears to indicate that Monday's sole counter-party was Resources.   None of the terms of any of the Agreements are challenged, nor are any of the Agreements attached to the Amended Complaint for context.   Trustee has not alleged that any of the Agreements were for unnecessary goods or services, that Monday was paid more than its invoices called for, that Monday was paid excessive amounts for its goods or services as compared with the market rate for comparable goods or services, or that the Agreements were in any other way unconventional or onerous.   It is impossible to tell from the pleading *why* any specific Agreement involving Monday would not have been "negotiated in good faith in the ordinary course of business by parties, each with independent interests and acting in their own best interests."   *U.S. Medical*, 531 F.3d at 1277, n.4.

Trustee vaguely alleges that Member's father was "involved" in Monday's operations and "played a role in negotiating the Agreements," that his father and uncle had "significant influence over the payments to U.S. Coal creditors, including payments to" Monday, and that his father "attempted to influence payments" to Monday.   [Am. Compl. ¶¶ 23, 34, 35, 36.]   None of these allegations establish that *Monday* had any semblance of control or influence over Debtors, or any one of them, including Resources.   These allegations do not create a basis to find that the Trustee plausibly has alleged that "the line between [Resources] and [Monday] is not entirely clear."   *Alma Energy*, 2010 U.S. Dist. LEXIS 121696, at *14.

Trustee cites a decision from the Southern District of Texas to argue that "[a] party may also qualify as a non-statutory insider if it has a close relationship with a statutory insider of the debtor – the relationship does not have to be with the Debtors themselves."   [Resp. 8 (citing

15

*Floyd v. Hefner*, 556 F. Supp. 2d 617, 658–59 (S.D. Tex. 2008)).]   The *Floyd* decision addresses

insider status at the summary judgment stage in the context of a civil conspiracy claim against

entities that helped finance the debtor's business venture.   The venture's benefits allegedly

would inure to the entity's directors and not to the entity itself, and the debtor's directors had

direct or indirect interests in the entities providing the financing.   The entities argued that the

trustee's conspiracy claim was "barred by the doctrine of *in pari delicto* because their actions

were taken with the cooperation of the Company's management."   *Floyd*, 556 F. Supp. 2d at

657.   The court found a question of fact existed and that a jury could conclude that the entity

investors were insiders of the debtor such that the *in pari delicto* defense would not apply.   The

court reasoned that the directors' interests in the entity defendants sufficed to create a

"sufficiently close relationship" that the entities could be deemed insiders.

 *Floyd*, while instructive, does not discuss the allegations in the trustee's pleading in that

case, rendering the decision of limited utility here.   The question presented here is whether the

Amended Complaint alleges sufficient facts to create a plausible inference that Monday is an

insider of any of the Debtors.   As discussed herein, aside from the conclusory statements and the

familial relationships alleged in the Amended Complaint, the pleading does not allege facts

sufficient to create a plausible inference that Monday is an insider.   Simply put, to plead non-

statutory insider status requires more than the bare statements found in the Amended Complaint.

As another court recently explained,

> [a] corporation that is wholly-owned by an insider of the debtor is not, *per se*, also
> an insider of the debtor.   *Miller Ave. Prof'l & Promotional Servs., Inc. v. Brady
> (In re Enter. Acquisition Partners, Inc.)*, 319 B.R. 626, 632 (B.A.P. 9th Cir.
> 2004); *Glassman v. Heimbach, Spitko & Heckman (In re Spitko)*, Adv. Pro. No.
> 05-0258, 2007 Bankr. LEXIS 2050, 2007 WL 1720242, at *8-9 (Bankr. E.D. Pa.
> June 11, 2007).   The *Complaint* must allege something more.

*Tese-Milner v. Edidin & Assocs. (In re Operations NY LLC)*, 490 B.R. 84, 101 (Bankr. S.D.N.Y.

2013) (emphasis in original).   The Amended Complaint here does not allege "something more"

to justify a plausible inference that Monday is a non-statutory insider of any Debtor.

**C.      The Court May Evaluate the Sufficiency of the Allegations in Trustee's Pleading
          Regarding Monday's Status as an Insider on a Motion to Dismiss.**

Trustee argues that whether a party is an insider is a fact-intensive inquiry that should not

be resolved on a motion to dismiss and cites several cases for that premise.   None of those cases,

however, announces a *per se* rule that, when a party is called an insider in a complaint asserting a

claim under § 547, the Court must take that statement as true and deny a motion to dismiss on the

basis that the complaint fails to state a plausible basis that the party is an insider.

In one of the cases cited in Trustee's Response, the court explained: "The complaint

alleges a long-standing multifaceted relationship that enabled the defendants to dominate and

control the Debtors.   Contrary to the defendants' assertions, the complaint states more than mere

conclusions, it alleges an adequate factual basis for these conclusions."   *OHC Liquidation Trust*

*v. Credit Suisse First Boston (In re Oakwood Homes Corp.)*, 340 B.R. 510, 524 (Bankr. D. Del.

2006).   Unlike in *Oakwood Homes*, the Amended Complaint in this case does not state more

than mere conclusions and does not provide an adequate factual basis to create a plausible

inference that Monday is an insider.   As a result, based on the allegations in the Amended

Complaint, Trustee may not pursue avoidance and recovery of the Total Transfers from Monday

for any period outside of the 90-day preference period in § 547.

**II.     Because the Amended Complaint does not Satisfy the Trustee's Obligation to Plead
          that Debtors made the Total Transfers to Monday with the Intent to Hinder,
          Defraud, or Delay Creditors, Trustee Fails to State a Claim for Actual Fraud.**

Counts II and IV seek avoidance and recovery of some or all of the Total Transfers

premised on actual fraud.   Count II seeks avoidance of payments "[o]n or within two (2) years

before the Petition Date" under § 548(a)(1)(A) and § 550.   [Am. Compl. ¶ 59.]   Count IV seeks

avoidance and recovery of the Total Transfers made "prior to the filing of the involuntary bankruptcy" under K.R.S. § 378.010 and §§ 544(b)(1) and 550(a)(1).   [*Id.* ¶ 69.]   These actual fraud claims, to the extent asserted against Monday as an initial transferee from any one of the Debtors (including Resources), fail because Trustee has not sufficiently alleged facts supporting a plausible inference that any Debtor made any one of the Total Transfers with an actual intent to hinder, delay, or defraud creditors.

The heightened standard in Civil Rule 9(b), made applicable to this adversary proceeding under Bankruptcy Rule 7009, applies to intentional fraudulent transfer claims where those claims are premised on a transferor-debtor's actual intent to defraud.   *Gold v. Winget (In re NM Holdings Co., LLC)*, 407 B.R. 232, 260 (Bankr. E.D. Mich. 2009).   "It is not the fraudulent intent of the debtor that must be pled with particularity; rather it is the 'circumstances constituting fraud.'"   *Id.* at 262; *see also Liquidating Tr. of App Fuels Creditors Trust v. Energy Coal Res., Inc. (In re Appalachian Fuels, LLC)*, Ch. 11 Case No. 09-10343, AP No. 11-1041, 2012 Bankr. LEXIS 4289, at *11 (Bankr. E.D. Ky. Sept. 14, 2012) ("For allegations of fraud, Rule 9(b) provides that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.   Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.'").

Trustee argues that courts within this Circuit have stated that Civil Rule 9(b) "is applied somewhat more liberally to bankruptcy trustees…."   [Resp. 12 (quoting *Motorwerks*, 371 B.R. at 295).]   Even with this in mind, however, those courts do not hold that Civil Rule 9(b) does not apply to bankruptcy trustees at all; rather, "a defendant is still entitled to notice of his alleged misconduct and, as such, trustees remain responsible for pleading actual fraud with precision." *Id.* (citations omitted) (requiring amendment of trustee's complaint in compliance with Civil Rule 9(b) to the extent trustee's claims are based in whole or in part on actual fraud); *see also*

*U.S. ex rel. Hirt v. Walgreen Co.*, 846 F.3d 879, 881 (6th Cir. 2017) ( "In all averments of 'fraud or mistake,' the plaintiff must state with 'particularity the circumstances constituting fraud or mistake.' Fed. R. Civ. P. 9(b)," and "[w]e have no more authority to 'relax' the pleading standard established by Civil Rule 9(b) than we do to increase it.").

Under the Code, Trustee may avoid transfers based on actual fraud in certain circumstances:

> The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
>
> > (A)  made such transfer or incurred such obligation *with actual intent to hinder, delay, or defraud* any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; ….

11 U.S.C. § 548(a)(1)(A) (emphasis added).   Thus, Trustee must allege "(1) a transfer of an interest of the debtor's property or the incurring of an obligation; (2) made on or within [two years] of the petition date; and (3) with actual fraudulent intent."   *Scherer v. Quality Communs., Inc. (In re Quality Communs., Inc.)*, 347 B.R. 227, 233 (Bankr. W.D. Ky. 2006).

Similarly, until 2016, Kentucky law provided:

> Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal, or right or thing in action, or any rent or profit thereof, *made with the intent to delay, hinder or defraud* creditors, purchasers or other persons, and every bond or other evidence of debt given, action commenced or judgment suffered, with like intent, shall be void as against such creditors, purchasers and other persons.   This section shall not affect the title of a purchaser for a valuable consideration, unless it appears that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor.

KY. REV. STAT. § 378.010 (emphasis added).   To prevail under K.R.S. § 378.010, Trustee must prove Debtors, including Resources, made transfers to Monday with an intent to delay, hinder, or

defraud creditors by clear and convincing evidence—the burden of persuasion associated with

actual fraud.  *Russell County Feed Mill, Inc. v. Kimbler*, 520 S.W.2d 309, 311 (Ky. 1975).

Thus, to survive a motion filed under Civil Rule 12(b)(6), Counts II and IV both require

allegations supporting a plausible inference that Debtors made some or all of the Total Transfers

with the actual intent to hinder, delay, and defraud creditors.   Monday argues that Trustee has

not met her pleading burden.   Trustee essentially responds that she alleged "badges of fraud"

from which the requisite intent may be inferred, notwithstanding the fact that the Total Transfers

may have been on pre-existing debt.   The Amended Complaint lists several "badges of fraud" in

Paragraphs 45, 62, and 70.

Fraudulent intent may be inferred from circumstantial evidence including the following

badges of fraud recognized under Kentucky law:

> Badges of fraud exist when:   (1) the transfer or conveyance is between persons
> who are related or occupy a confidential relationship; (2) where the transfer or
> conveyance contains false statements and recitals as to consideration; (3) where
> the transfer or conveyance is made by a debtor in anticipation of a suit against
> him or after a suit has begun or is pending against him; and (4) where the transfer
> or conveyance is made by a debtor who transfers all or any appreciable part of his
> property when he is insolvent or financially embarrassed.

*Jadco Enters. v. Fannon*, Civil Action No. 6:12-225-DCR, 2013 U.S. Dist. LEXIS 162717, at

*35-37 (E.D. Ky. Nov. 15, 2013) (citing *Kimbler*, 520 S.W.2d at 311).   Here, Trustee argues she

has pled a factual basis for these four badges and two additional badges:   inadequacy of

consideration and that the transfers preferred Monday's interest over other creditors "to hinder,

delay or defraud the other creditors."   [Resp. 15-16.]

**Badge One – Transfers Made between Persons who are Related, are Insiders, or**

**who Occupy a Confidential Relationship:**   To support this badge, Trustee points to her

allegations that Member is related to John and Kenneth Whitt.   As explained above, Defendant

Monday is a legal entity separate from Member.   It is neither an insider nor "related" to Debtors,

including Resources.   The Amended Complaint also contains no factual allegations that

plausibly infer that Monday had a confidential relationship with any Debtor.   Further, the

paragraphs alleging these familial ties do so only generally and do not speak to Debtors' intent

when making even one specific transfer of property to Monday.

**Badges Two/Three - False Statements/Inadequacy of Consideration:** Accepting the

Amended Complaint's well-pleaded factual allegations as true, there are no factual averments

alleging false statements of consideration or inadequacy of consideration actually plead in the

Amended Complaint.   Trustee's Response cites Paragraph 40 of the Amended Complaint to

show that she pled these badges.   Neither Paragraph 40 nor any other paragraph in the Amended

Complaint suggests, let alone actually alleges, that any Debtor made any specific transfer to

Monday with a fictitious or false statement of consideration.   Likewise, neither Paragraph 40

nor any other paragraph states that any Debtor received inadequate consideration in exchange for

any payment it made to Monday.

In pertinent part, Paragraph 40 states:   "[e]ven though U.S. Coal claimed to suffer from a

decreased demand for coal and reduced production output, the Defendant's average invoice for

the twelve months prior to the Petition Date was $57,072.82 compared to the previous twelve

month average invoice of $51,692.24."   [Am. Compl. ¶ 40.]   Assuming as true that Monday's

monthly average invoice amount increased in the year prior to bankruptcy by about 10%, this

does not speak to whether any Debtor had the actual intent to hinder, defraud, or delay creditors

when making even one specific transfer to Monday.

Trustee does not plead that Monday performed no work or minimal work in exchange for

any one of the Total Transfers, or that Monday did not take on additional work in exchange for

more pay, or that no basis existed for Monday to raise its prices even if it did not take on more

work.   Increased monthly billings, offered in a factual vacuum, do not allege inadequate

consideration or false statements of consideration for any of the Total Transfers.   The Amended

Complaint also does not allege secret or hurried transactions not in the usual mode of doing

business, the use of dummy or fictitious parties, a reservation of benefits by any Debtor, control

or dominion of property any Debtor, or the like.   *Schilling v. Montalvo (In re Montalvo)*, 324

B.R. 619, 623 (Bankr. W.D. Ky. 2005).   Rather, as Trustee alleges, the payments to Monday

stemmed from a duty to pay under the Agreements, pursuant to which "[t]he Defendant allegedly

provided goods and/or services to one of the Debtors including but not limited to the Total

Transfers set forth in the invoices between the parties."   [Am. Compl. ¶ 39.]

**Badge Four - Transfers in Anticipation of Litigation:** Trustee avers that Paragraph 45

of the Amended Complaint alleges that the Total Transfers were made in anticipation of

litigation: "Defendant knew that the Debtors had other creditors, some of whom were threatening

litigation, that remained unpaid and that there was a strong probability that the Debtors would

need to seek Chapter 11 or Chapter 7 relief."   [Am. Compl. ¶ 45.]   This statement of Monday's

professed knowledge of threatened lawsuits or the potential for a bankruptcy filing does not

speak to *Debtors'* intent in making any one of the Total Transfers to Monday.   In addition, "[a]

pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of

'further factual enhancement.'"   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555,

557).   This is the kind of "naked assertion devoid of further factual enhancement" that the

Supreme Court declared to be insufficient, as the Amended Complaint contains no other facts to

support this contention.

**Badge Five - Debtors' Insolvency when Making the Transfers:** Trustee asserts that the

Amended Complaint alleges Debtors' insolvency "at all times at least as far back as the 2009

ECM transactions," which amounts to a well-pleaded badge of fraud.   [Resp. 16 (citing Am.

22

Compl. ¶¶ 42, 52, 63).]   None of these three Paragraphs reference "the 2009 ECM

Transactions."   Paragraphs 52 and 63 of the Amended Complaint contain no allegations about

insolvency.   Paragraph 42 states: "[a]t the time the Debtors paid the Total Transfers to the

Defendant, numerous creditors of the Debtors remained unpaid…."

Although the Response does not cite them, Paragraphs 27 and 28 of the Amended

Complaint contain allegations about "Debtors' financial difficulties" before their bankruptcy

proceedings commenced and identify pre-petition debts owed to certain secured and unsecured

parties.   These two Paragraphs, however, do not speak to transfers of all or any appreciable

amount of Debtors' property at any time.   Paragraph 45 (also not mentioned in the Response for

this point) states: "as a result of that confidential relationship [between Monday and "insiders of

the Debtors"], Debtors transferred an appreciable part of their property to or for the benefit of the

Defendant during the Transfer Period[11]  and while the Debtors were insolvent, financially

embarrassed, and other creditors were not being timely paid."   This is yet another formulaic

averment devoid of factual support.   In sum, there are no well-pleaded factual, non-conclusory

averments in the Amended Complaint that the Debtor making the transfer (including Resources)

transferred all or any appreciable part of its property when any of the Total Transfers on Exhibit

A were made —even assuming Debtors were insolvent during the "Transfer Period." *Jadco*

*Enters.*, 2013 U.S. Dist. LEXIS 162717, at *35-36.

Finally, Trustee asserts that transfers made to prefer one creditor over others is a badge of

fraud, relying heavily on another federal district court decision for the proposition that Kentucky

recognizes that "badges of fraud" include:

> transfers made to prefer one creditor's interest over others in order to hinder,
> delay or defraud the other creditors, such as in this case, where *Defendant*[12]

---

[11] Although it is a capitalized term in the Amended Complaint, the pleading does not define this term.

[12] The Court assumes this is a typographical error and Trustee meant "Debtors," not "Defendant."

favored their own "insider" interests which hindered, delayed and defrauded its own legitimate creditors.    (*See, e.g.,* Amended Complaint ¶¶ 37, 45, 62, 69).    *See JADCO Enterprises, Inc. v. Fannon*, 991 F. Supp. 2d [947,] 953 [(E.D. Ky. 2014)] ("While the defendants argue that the existence of a pre-existing debt protects them from the claim of fraud, they are incorrect, for the reasons outlined above.   Once the burden has shifted to them they must rebut that burden by showing the good faith and adequate consideration of the transactions in question, which they have failed to do."); *Joyeux* [*v. Anderson-Dulin-Varnell Co.*], 281 S.W. 796 [(Ky. 1926).]

[Resp. 16 (emphasis added).]    Trustee's reliance is misplaced.    In this opinion, the district court held that even where the challenged transfer was a payment on a preexisting debt, this did not preclude a claim that there was fraudulent intent behind the transfer: "The correct analysis first looks at the badges of fraud, followed by the validity of pre-existing debt. The fact finder should then determine if there was any fraudulent intent behind the transfer(s).   The analysis does not end once evidence of pre-existing debt is offered."    *Jadco Enterprises, Inc.*, 991 F. Supp. 2d at 953.   As reviewed above, however, the Amended Complaint does not contain plausible, well-pleaded factual allegations supporting the notion that Debtors paid Monday to hinder, delay, or defraud other creditors.[13]    Instead, the allegations in the Amended Complaint that Trustee cites to support this badge of fraud (found in Paragraphs 37, 45, 62, and 69) confirm the inadequacy of her pleading:

- Paragraph 37 alleges: "[p]ayments were consistently ensured to Defendant to the detriment of [*sic*] as other creditors were not paid in a timely manner.   While other similar creditors were not paid, Defendant was consistently paid on its Agreements with the Debtors."   Alleging that Monday was paid on its invoices and other creditors were not does not plausibly support an inference that any Debtor had the actual intent to

---

[13] Trustee cites both the *Jadco* decision and the Kentucky Court of Appeals' decision in *Joyeux v. Anderson-Dulin-Varnell Co.*, 281 S.W. 796 (Ky. 1926), to establish a legal basis for this badge of fraud. The *Joyeux* decision stands for the following proposition related to an old Kentucky statute regarding conveyances made to prefer one creditor over others in contemplation of insolvency:

It is essential to state a cause of action under section 1910 to allege that the debtor, at the time he made the conveyance, or engaged in the transaction assailed in the pleading as the basis of the action, was insolvent, not at the time of filing the pleading, and that it was made or engaged in by him in contemplation of insolvency with the design or intent to prefer one or more of his creditors as against the rest.

*Grand Lodge of Kentucky v. First Nat'l Bank*, 64 S.W.2d 474, 476 (Ky. 1933) (citing *Joyeux*). The *Joyeux* decision does not change the Court's analysis regarding the pleading deficiencies in the Amended Complaint related to this alleged badge of fraud.

hinder, defraud or delay other creditors when making any specific transfer of property to Monday.   Choosing to pay one creditor over another, without more, is not a badge of fraud; it is the basis for a preference claim.

- Paragraphs 45, 62, and 69 do not allege facts, only conclusory allegations that this Court cannot consider under *Iqbal* and *Twombly*.   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Therefore, taking into account each paragraph of the Amended Complaint that Trustee cites to show that she alleged this badge of fraud sufficiently, it is evident that the pleading does not assert facts supporting the premise that Debtors made the Total Transfers intending to prefer Monday and hinder, delay or defraud other creditors.

For these reasons, the Amended Complaint does not plead either facts or badges of fraud necessary to form a plausible basis from which any Debtor's requisite intent to hinder, defraud, or delay can be inferred in connection with any alleged transfer to Monday that could support Trustee's claims in Counts II and IV.

## III.   The Amended Complaint Fails to State a Claim for Constructive Fraud against Monday.

Count III seeks recovery under subsections of § 548(a)(1)(B).   This section provides, in pertinent part:

(a)      (1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--

(B)      (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)      (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

25

> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548.   In addition, Count V seeks relief under § 544 and K.R.S. § 378.020.   The

Kentucky statute (now repealed) stated:

> Every gift, conveyance, assignment, transfer or charge made by a debtor, of or upon any of his estate without valuable consideration therefor, shall be void as to all his then existing creditors, but shall not, on that account alone, be void as to creditors whose claims are thereafter contracted, nor as to purchasers from the debtor with notice of the voluntary alienation or charge.

KY. REV. STAT. § 378.020 (repealed Jan. 1, 2016).   Trustee seeks to recover from Monday under

these constructive fraud statutes.

> **A.     The Amended Complaint Fails to Allege Sufficient Facts to Support a Plausible Inference that the Total Transfers Lacked the Requisite Consideration.**

To state a claim to avoid constructively fraudulent transfers to and recover from Monday,

Trustee must allege facts that plausibly show that the Debtor making a transfer, such as

Resources, received "less than a reasonably equivalent value in exchange for such transfer[s]"

(11 U.S.C. § 548(a)(1)(B)(i)) or that transfers were made "without valuable consideration" (KRS

§ 378.020).   Monday argues that the Amended Complaint fails to do this: "[t]here is no fact

allegation in the Amended Complaint that renders it plausible that these Transfers lacked

consideration."   [Motion at 7.]   In response, Trustee contends:

> The Amended Complaint plainly alleges that Total Transfers purportedly received by Defendant were not supported by Debtors' records (Amended Complaint ¶ 40) and did not appear to be arms-length transactions, but were improperly influenced by Johnathan Whitt and his relatives, directors and officers of the Debtors.   *Id*. at ¶¶ 35, 36….

> Despite the detailed allegations in the Amended Complaint, Defendant's argument that the Trustee's constructively fraudulent transfer claims should be

dismissed is based on the incorrect presumption that the transactions at issue were
a "payment of valid antecedent debt."   Motion p.6.   Indeed, the only basis for
Defendant's argument is that the invoices on Exhibit A of the Amended
Complaint were valid – a fact that the Trustee explicitly refuted as detailed above.

[Resp. 10.]

The Response again distorts what the Amended Complaint alleges, and the Amended

Complaint does not support a plausible inference regarding consideration from Monday.   As

above, Trustee misrepresents Paragraph 40—it does not allege that the Total Transfers "were not

supported by Debtors' records."   Paragraphs 35 and 36 do not allege that Monday did not

provide "reasonably equivalent value" or "valuable consideration" in exchange for any payment

it received.   Finally, although Trustee's Response states that she "expressly refuted" that "the

invoices on Exhibit A of the Amended Complaint were valid," this is wrong.   As discussed

earlier in references to the purported "badges of fraud" relating to consideration, the Amended

Complaint does not assert factual allegations regarding any aspect of the terms of any of the

Agreements, aside from the "fact" that Monday's average monthly invoice increased by just over

10% in the year before Debtors went into bankruptcy.

The Amended Complaint alleges that the Total Transfers relate to Monday's provision

of goods and services.   Trustee pleads Count III "in the alternative … to the extent one or more

of the 548 Transfers identified on Exhibit A were not on account of an antecedent debt…."

[Am. Compl. ¶ 65 (emphasis removed).]   Exhibit A to the Amended Complaint references

"vendor invoices" from Monday.   The Amended Complaint alleges that "the Debtors"

"regularly" and "frequently purchased goods and services" from Monday, such that "the

Debtors" and Monday "apparently entered into numerous agreements, which are evidenced by

invoices, communications and other documents."   [*Id.* ¶¶ 25, 32.]   Trustee also asserts that

Monday "allegedly provided goods and/or services to one of the Debtors including but not

limited to the Total Transfers set forth in the invoices between the parties."   [*Id.* ¶ 39.]

Payment of valid antecedent debt, as a matter of law, is not a constructively fraudulent transfer as

dollar-for-dollar reduction of indebtedness amounts to "reasonably equivalent value" and

"consideration" under the pertinent statutes.   11 U.S.C. § 548(d)(2)(A) ("satisfaction of . . .

antecedent debt" constitutes "value"); *In re Southeast Waffles, LLC*, 702 F.3d 850, 855 (6th Cir.

2012) (stating "dollar-for-dollar reduction in debt is sufficient to establish equivalent value for

purposes of the fraudulent transfer statutes"); *In re Wilkinson*, 196 Fed. Appx. 337, 343-44 (6th

Cir. Aug. 17, 2006) (unpublished) ("dollar-for-dollar reduction in debt" constitutes "reasonably

equivalent value" and "valuable consideration").

Because the Amended Complaint does not allege facts to support a plausible inference

that Monday did not provide "reasonably equivalent value" or "valuable consideration" in

exchange for any payment it received under the Agreements, Trustee has not pled a necessary

element of her constructively fraudulent transfer claims against Monday.

**B.    The Amended Complaint Fails to Allege Sufficient Facts to Support a Plausible Inference that Debtors were Insolvent when they Made, or Became Insolvent Owing to, Any of the Total Transfers.**

To plead the constructively fraudulent transfer claims sufficiently, Trustee must allege

facts to plausibly establish that a Debtor was insolvent when it made the Total Transfers, or

became insolvent as a result of such a transfer.   11 U.S.C. § 548(a)(1)(B)(ii)(I).   In three places

in the Amended Complaint, Trustee alleges that Debtors were "insolvent" or "financially

embarrassed."   [Am. Compl. ¶¶ 45, 55, 65.]   But none of these cited Paragraphs provide

specificity with regard to any Debtor's insolvency on an identified date of even one transfer.

> [A] trustee's complaint cannot merely make a conclusory statement that a debtor
> was insolvent.   *In re Gluth Bros. Constr., Inc.*, 424 B.R. 368 (Bankr. N.D. Ill.
> 2009).   A complaint must contain enough factual information to plausibly show
> the debtor's liabilities exceeded assets at the time of the transfers.   *In re Saba
> Enters., Inc.*, 421 B.R. 626, 646 (Bankr. S.D.N.Y. 2009); [*Russell v. Little (In re
> Anderson)*, Ch. 7 No. 10-50757, AP No. 10-5081,] 2010 Bankr. LEXIS 4395, [at
> *7-8] (citing *Joseph v. Frank (In re Troll Commc'ns, LLC)*, 385 B.R. 110, 123-24
> (Bankr. D. Del. 2008) (finding insolvency adequately pleaded where the

complaint alleged facts showing that debtor's liabilities exceeded their assets as of the date of the transfer)); *[s]ee also [In re Charys Holding Co.*, 443 B.R. 628,] 636 [(Bankr. D. Del. 2010)] (providing balance sheet information that did not reflect insolvency, but further alleged that the intangible goodwill entry was rendered valueless by independent contractors and that the tangible net assets were overvalued at the time of the transfers).

*Sarachek v. Right Place, Inc. (In re Agriprocessors, Inc.)*, Ch. 7 No. 08-2751, AP No. 10-09123, 2011 Bankr. LEXIS 3671, at * 17-18 (N.D. Iowa Sept. 30, 2011).   Because the Amended Complaint does not provide anything more than conclusory statements regarding Debtors' insolvency or financial embarrassment, the Amended Complaint fails to state a claim for constructively fraudulent transfers to Monday.

**IV.     Trustee has not Alleged a Plausible Claim to Avoid and Recover Post-Petition Transfers from Monday under Section 549.**

Under the Code, and subject to some exceptions, "the trustee may avoid a transfer of property of the estate . . . that occurs after the commencement of the case; and . . . that is not authorized under this title or by the court."   11 U.S.C. § 549(a).   Three requirements for avoidance under § 549(a) must be alleged:   (a) a transfer of estate property; (b) occurring after the case's commencement; (c) that neither the Court nor any Code provision authorized.   *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 930 F.2d 458, 465 (6th Cir. 1991).

Trustee alleges in Count VI that she is entitled to recover certain of the Total Transfers listed on Exhibit A to the extent they "were transfers of an interest of the Debtors' property that cleared the Debtors' Bank Accounts after the Petition Date" because they "were never authorized by the Bankruptcy Court or under the Bankruptcy Code."   [Am. Compl. ¶ 80.]   As noted above, Resources' "Petition Date" was May 23, 2014, and Exhibit A reflects several "vendor invoices" and "vendor payments" after this date.

Monday argues that the Amended Complaint does not allege facts from which the Court may infer that a plausible claim under § 549 exists.   More specifically, Monday avers that the

Amended Complaint does not allege that any post-petition payments to Monday were not authorized under § 363, which permits a chapter 11 debtor in possession (such as Resources, until its case was converted on April 24, 2015) to operate in the ordinary course by engaging and paying vendors like Monday.   Monday asks the Court to "take judicial notice of the Monthly Operating Reports filed by the Debtor in the main case, which illustrate that post-petition payments to it were regularly disclosed, and with respect to which there was no objection by any party-in-interest."   [Mot. 11 n.8.]   In response, Trustee states that the Amended Complaint pleads that the Total Transfers were not arms-length transactions, and contends that she should be permitted to take discovery on all post-petition transfers, including to determine whether any pre-petition work by Monday was paid post-petition.   Trustee does not respond to Monday's request that the Court take judicial notice of the Monthly Operating Reports.

A debtor in possession may engage in transactions within the ordinary course of its business without notice or a hearing.   11 U.S.C. § 363(c)(1).   This permits a chapter 11 debtor "'the flexibility to engage in ordinary transactions without unnecessary creditor and bankruptcy court oversight while protecting creditors by giving them an opportunity to be heard when transactions are not ordinary.'"   *In re Cook & Sons Mining, Inc.*, Civil Action No. 05-19, 2005 U.S. Dist. LEXIS 21615, at *10 (E.D. Ky. Sept. 28, 2005) (quoting *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3rd Cir. 1992)).

The Amended Complaint does not identify a plausible factual basis upon which the Court can infer that Monday provided non-ordinary-course goods and services to Debtors, including Resources.   The one substantive paragraph in the Amended Complaint supporting this cause of action, Paragraph 80, states that unspecified post-petition transfers listed on Exhibit A were not authorized—but Trustee does not identify even one such transaction that differed in any material way from the many pre-petition transfers for goods and services listed on Exhibit A, which the

Amended Complaint alleges to have occurred "frequently" and "regularly."   The Court, indeed,

may take judicial notice of its own records, and the Monthly Operating Reports filed in Debtors'

main case do list post-petition payments to Monday to which no party objected.

As it pertains to Count VI, the Amended Complaint offers only "labels and conclusions"

and a "formulaic recitation of the elements," which "will not do."   *Iqbal*, 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 555).   Paragraph 80 contains assertions that "are 'merely

consistent with'" Monday's liability, such that "it 'stops short of the line between possibility and

plausibility of "entitlement to relief."'"   *Id*. at 678-79 (citations omitted).

## V.   Leave to Amend Will Not be Granted.

The Amended Complaint fails to state claims upon which relief can be granted (aside

from the 90-Day Preference Claim) for the reasons stated above.[14]   The remaining issue is

whether Trustee may further amend her pleading.

Under Civil Rule 15, with leave of the court, a party may further amend its pleadings

after its first amendment (permitted "as a matter of course").   Such leave is to be given freely

"when justice so requires."   FED. R. CIV. P. 15(a)(2).   This Court has discretion as to whether to

permit further amendment, which discretion is limited by the liberal policy of amendments set

forth in Civil Rule 15.   *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990)

(citations omitted).

In this matter, Trustee has not formally or informally sought leave to further amend her

pleading.   Trustee has not moved for leave to file a Second Amended Complaint under Civil

Rule 15, and the Response does not informally request leave to amend.   At oral argument,

---

[14] The Court also notes deficiencies in Trustee's pleading with regard to her recovery claim under § 550 for the reasons discussed in *Spradlin v. Pryor Cashman LLP (In re Licking River Mining, LLC)*, Ch. 7 No. 14-10201, AP No. 16-1031, 2017 Bankr. LEXIS 805 (Bankr. E.D. Ky. Mar. 24, 2017).   Monday did not raise these deficiencies in the Motion, and they are not a basis for the Court's disposition herein.

Trustee's counsel also did not specifically request leave to re-plead her claims.   While

Monday's counsel stated at oral argument that he would not oppose Trustee's ability to re-plead

the factual issue of Debtors' insolvency when making the Total Transfers (and Trustee's counsel

stated that Trustee could re-plead with regard to insolvency), Monday's counsel argued that other

bases existed that would support dismissal.   As reflected above, the Court agrees that multiple

other grounds exist that support dismissal of Trustee's claims aside from Trustee's failure to

plead Debtors' insolvency sufficiently.

   Notwithstanding the absence of a motion to amend from Trustee, courts may consider

"[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party,

repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing

party, and futility of amendment" when deciding whether to permit additional amendments.

*Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973).   The Bankruptcy

Appellate Panel for this Circuit has discussed when amendment to cure deficiencies should be

granted:   "'The relevant issues in our inquiry are (1) whether [the party seeking amendment] had

sufficient notice that his amended complaint was deficient, and (2) if so, whether [he] had an

adequate opportunity to cure the deficiencies.'"   *Lyon v. Rappaport (In re ClassicStar, LLC)*,

Case No. 10-8509, 2011 Bankr. LEXIS 558, at *14 (B.A.P. 6th Cir. Feb. 24, 2011) (quoting *U.S.*

*ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003)).

   Trustee filed her original complaint on June 12, 2016, and received Monday's initial

motion to dismiss on August 9.   That first motion to dismiss concerned the same basic

deficiencies with respect to the initial complaint that Monday again raised in the instant Motion

regarding the Amended Complaint.   Trustee did not respond to the initial motion to dismiss.

Instead, Trustee filed the Amended Complaint over two months later.   But the amended

pleading did not remedy the infirmities in Trustee's initial pleading, which Monday identified in

32

its first motion.   For example, both the initial complaint and the Amended Complaint fail to plead sufficient facts regarding inadequacy of consideration to support Debtors' constructive fraud claims, even though Monday raised this issue squarely in its initial motion.   [ECF No. 14-1 at 6-7.]   Trustee had the opportunity to amend to address her obligation to plead non-conclusory facts supporting a plausible inference that Monday did not provide "reasonably equivalent value" or "valuable consideration" in exchange for any payment it received under the Agreements, and she did not do so.

Trustee already amended once and chose not to correct the pleading deficiencies addressed in Monday's initial motion.   Trustee has not moved for leave to further amend her pleading.   Trustee's Response does not informally request leave to re-plead, nor does it offer a basis as to why the deficiencies in her initial pleading regarding consideration were not and could not have been addressed in the Amended Complaint, or what she would propose to include in a further amended pleading.   The Court concludes that Trustee's failure to address the original pleading's deficiencies, despite ample time to do so, reflects either that Trustee did not take the steps necessary to proceed with her claims in good faith, or that permitting additional amendment would be futile.

**ORDER**

Based on the foregoing, Defendant Monday's Motion is GRANTED.   Counts I-VIII are DISMISSED WITH PREJUDICE, except to the extent that Counts I and VII shall continue with respect to the 90-Day Preference Claim.   The Court shall enter an amended trial order regarding the 90-Day Preference Claim.

33

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Tracey N. Wise*
**Bankruptcy Judge**
**Dated: Thursday, April 13, 2017**
**(tnw)**